**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
PATRICK J. CALLAHAN, JR.,                                    :
                                                             :
                    Plaintiff,                                :
                                                             :
                v.                                      :            No. 10 Civ. 4599 (BSJ)
                                                             :
CREDIT SUISSE (USA), INC., CREDIT SUISSE                     :
GROUP SA, CREDIT SUISSE SECURITIES                           :
(USA) LLC, and CREDIT SUISSE FIRST                           :
BOSTON CORPORATION,                                          :
                                                             :
                  Defendants.                              :
---------------------------------------------------------------X

 

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

 

**THOMPSON WIGDOR LLP**

Douglas H. Wigdor
David K. Reid
85 Fifth Avenue
New York, New York 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@thompsonwigdor.com
dreid@thompsonwigdor.com

*COUNSEL FOR DEFENDANTS CREDIT*
*SUISSE (USA), INC., and CREDIT SUISSE*
*SECURITIES (USA) LLC.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

STATEMENT OF FACTS .................................................................................................. 1

PROCEDURAL HISTORY ................................................................................................. 10

ARGUMENT ........................................................................................................................ 13

    I.    PLAINTIFF'S SECOND, THIRD, FOURTH AND FIFTH CLAIMS, FOR BREACH
        OF THE SETTLEMENT TERM SHEET AND BREACH OF IMPLIED
        COVENANT OF GOOD FAITH AND FAIR DEALING WITH RESPECT
        THERETO, ARE BARRED BY THE SIX-YEAR STATUTE OF
        LIMITATIONS ......................................................................................................... 15

        A.  Plaintiff's Breach of Contract Claims for the April 9, 2003 Formal Separation
            Agreement are Barred by the Statute of Limitations ............................................. 16

        B.  Plaintiff's Breach of the Duty of Good Faith and Fair Dealing for the April 9,
            2003 Formal Separation Agreement are Barred by the Statute of Limitations ...... 21

    II.    PLAINTIFF'S SIXTH CLAIM FOR BREACH OF THE DUTY OF GOOD FAITH
        AND FAIR DEALING WITH RESPECT TO THE 2009 AGREEMENT IS
        DUPLICATIVE OF THE CORRESPONDING BREACH OF CONTACT
        CLAIM ....................................................................................................................... 22

    III.    PLAINTIFF'S SEVENTH CLAIM FOR IMPOSITION OF A CONSTRUCTIVE
         TRUST IS BARRED BY THE SIX-YEAR STATUTE OF LIMITATIONS ............ 23

CONCLUSION ..................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

*Argonaut P'ship L.P. v. Bancomer, S.A.*,
  Nos. 96-cv-2222, 00-cv-4244, 2001 WL 585525 (S.D.N.Y. May 30, 2001)...................23

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ........................................................................................13, 14

*Beekman Inv. Partners, L.P. v. Alene Candles, Inc.*,
  No. 05-cv-8746 (DLC), 2006 U.S. Dist. LEXIS 5341 (S.D.N.Y. 2006) .........................15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................14

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002) ...........................................................................................2

*Cortec Indus., Inc. v. Sum Holding, L.P.*,
  949 F.2d 42 (2d Cir. 1991) .............................................................................................2

*FCOF UB Secs. LLC v. Morequity, Inc.*,
  663 F. Supp. 2d 224 (S.D.N.Y. 2009) ............................................................................22

*Field Day, LLC v. County of Suffolk*,
  463 F.3d 167 (2d Cir. 2006) ...........................................................................................2

*Harding v. Naseman*,
  No. 07-cv-8767 (RPP), 2008 WL 4900562 (S.D.N.Y. Nov. 14, 2008) ...........................24

*Hayden v. County of Nassau*,
  180 F.3d 42 (2d Cir. 1999) .............................................................................................2

*ICD Holdings S.A. v. Frankel*,
  976 F. Supp. 234 (S.D.N.Y. 1997) .................................................................................22

*Malone v. Bayerische Hypo-Und Vereins Bank*,
  Nos. 08-cv-7277 (PGG), 09-cv-3676 (PGG), 2010 U.S. Dist. LEXIS 9529
  (S.D.N.Y. Feb. 4, 2010).................................................................................................22

*Mangiafico v. Blumenthal*,
  471 F.3d 391 (2d Cir. 2006) ...........................................................................................2

*McKenna v. Wright*,
  386 F.3d 432 (2d Cir. 2004) ...........................................................................................16

*Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*,
    392 F.3d 520 (2d Cir. 2004) ........................................................................15

*Quiroga v. Fall River Music, Inc.*,
    No. 93-cv-3914 (RPP), 1998 WL 851574 (S.D.N.Y. Dec. 7, 1998)................................24

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000) ...........................................................................2

*Simon v. Unum Group*,
    No. 07-cv-11426, 2008 WL 2477471 (S.D.N.Y. June 19, 2008)....................................22

*Staehr v. Hartford Fin. Servs. Group*,
    547 F.3d 406 (2d Cir. 2008) ........................................................................16

*Terwilliger v. Terwilliger*,
    206 F.3d 240 (2d Cir. 2000) ........................................................................15

*Zdanok v. Glidden Co., Durkee Famous Foods Div.*,
    327 F.2d 944 (2d Cir. 1964) ........................................................................14

**STATE CASES**

*American-European Art Assocs., Inc. v. Trend Galleries, Inc.*,
    641 N.Y.S.2d 835 (1st Dep't 1996)..................................................................15

*Auffermann v. Distl*,
    867 N.Y.S.2d 527 (2d Dep't 2008) ..................................................................24

*Ely-Cruikshank Co. v. Bank of Montreal*,
    81 N.Y.2d 399 (N.Y. 1993)...........................................................................16

*In re Wallace*,
    595 N.Y.S.2d 572 (2d Dep't 1993) ..................................................................24

*Lakeville Pace Mech., Inc. v. Elmar Realty Corp.*,
    276 A.D.2d 673 (2d Dep't 2000) .....................................................................15

*Sheth v. New York Life Ins. Co.*,
    273 A.D.2d 72 (1st Dep't 2000).....................................................................15

**STATUTES AND OTHER AUTHORITIES**

5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1226
(3d ed. 2004) ......................................................................................16

C.P.L.R. § 213................................................................................................16, 22

Fed. R. Civ. P. 8 *et seq.*................................................................................13, 16

Fed. R. Civ. P. 12 *et seq.*...........................................................................1, 13, 16

Defendants Credit Suisse (USA), Inc., and Credit Suisse Securities (USA) LLC (also improperly impleaded as "Credit Suisse First Boston Corporation"), (collectively, "Defendants" or "Credit Suisse"),[1] respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Plaintiff's Amended Complaint in part and with prejudice.

As set forth in greater detail below, Plaintiff has asserted causes of action that are, on the face of the Amended Complaint and the documents incorporated therein by reference, barred by the statute of limitations. Furthermore, this Court, in an Order dated August 18, 2011 (the "August 18, 2011 Order"),[2] dismissed many of these exact claims based on the same facts because those claims were barred by the statute of limitations and/or duplicative. Accordingly, the untimely claims set forth in Plaintiff's Amended Complaint should also be dismissed, with prejudice, pursuant to Rule 12(b)(6).

## STATEMENT OF FACTS

In the Spring of 2000, Plaintiff Patrick J. Callahan, Jr. ("Plaintiff" or "Callahan") was employed as an investment banker with Donaldson, Lufkin & Jenrette ("DLJ"). (*See* Reid Decl. Ex. 2 at ¶ 14).[3] Later that year, DLJ was acquired by Credit Suisse, which continued to employ Callahan. (*See* Reid Decl. Ex. 2 at ¶ 15). On April 3, 2001, pursuant to the terms of a written

---

[1]    Defendant Credit Suisse Group AG has not filed an appearance in this action and, upon information and belief, is not subject to jurisdiction in this Court nor has it been served with process.

[2]    A copy of the August 18, 2011 Order is annexed as <u>Exhibit 1</u> to the Declaration of David Reid in Support of Defendants' Motion to Dismiss (hereinafter, the "Reid Decl.").

[3]    A copy of the Amended Complaint is annexed to the Reid Decl. as <u>Exhibit 2</u>. Further references to Plaintiff's Amended Complaint in this action, filed in the Southern District of New York on October 3, 2011, are abbreviated herein as "Am. Compl. ¶ __."

"Retention Plan" issued in connection with the acquisition of DLJ,[4] Credit Suisse granted

Callahan a "Retention Award" of $500,000, comprised of 2,619 "Phantom Shares" that would

convert to actual "Credit Suisse Group Shares" after vesting and settlement occurred.[5]  The

shares were scheduled to vest in equal tranches on July 1, 2001, 2002, and 2003.  (*See* Reid Decl.

Ex. 2 at ¶ 17; Chapman Decl. Ex. 2).  Pursuant to the terms of the Retention Plan and Callahan's

Retention Award, Callahan would not be entitled to unvested tranches of the Retention Award in

the event of Callahan's "voluntary resignation."  (Chapman Decl. Ex. 1, at 5 No. (i)).  However,

in the event that Callahan was terminated "without cause" after June 30, 2001, vesting of the

remaining tranches of unvested shares would be accelerated to the date of termination.  (*Id.*).

In December 2001, Credit Suisse informed Callahan that he would be terminated

"without cause" effective December 31, 2001.  (*See* Reid Decl. Ex. 2 at ¶ 22).  On January 14,

---

[4]     A copy of the "Retention Plan," which is described at Am. Compl. ¶ 16 and incorporated therein by reference, is annexed as <u>Exhibit 1</u> to the Declaration of Jaunelle Chapman in Support of Defendants' Motion to Dismiss (hereinafter, the "Chapman Decl.").

The Exhibits annexed to the Chapman Decl. are properly before the Court in support of Defendants' motion pursuant to Fed. R. Civ. P. 12(b)(6).  *See generally Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006) ("In considering a motion to dismiss for failure to state a claim, a district court may consider 'the facts stated in the complaint . . . and documents incorporated by reference in the complaint.'") (quoting *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)); *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.") (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)); *Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000) ("[D]ocuments that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit" may be incorporated.) (citation omitted); *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] . . . which is integral to the complaint, the defendant may produce [it] when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure.").

[5]     A copy of the "Retention Award," which is described at Am. Compl. ¶ 17 and incorporated therein by reference, is annexed to the Chapman Decl. as <u>Exhibit 2</u>.

2002, Credit Suisse offered Callahan a proposed separation agreement (the "January 14, 2002 Separation Agreement"), which outlined his entitlement to certain incentive compensation and included various covenants and releases.  (*See* Reid Decl. Ex. 2 at ¶ 24; Chapman Decl. Ex. 3).[6] Exhibit "A" to the January 14, 2002 Separation Agreement provided, with respect to Callahan's "Retention Award":

> Pursuant to the terms of your Retention Agreement with DLJ dated September 27, 2000, you were granted a Retention award with an initial total value of $5,000.  According to the terms of the Retention Award, vesting of the July 1, 2001 tranche of Credit Suisse Group phantom shares under the Retention Award has already occurred. The vesting of the July 1, 2002 and the July 1, 2003 tranches of the Credit Suisse Group phantom shares (6,984 shares) will vest on your Separation Date as the Company has terminated your employment without cause.  You will be entitled to the settlement of these Awards within 120 days of your Separation Date.

(Reid Decl. Ex. 2 at ¶ 25; Chapman Decl. Ex. 3, at Ex. A, No. 1).

Insisting that he was entitled to a larger performance bonus than the January 14, 2002 Separation Agreement provided, Callahan rejected the January 14, 2002 Separation Agreement, opting instead to initiate a grievance proceeding in accordance with Credit Suisse's written "internal grievance procedures."  (*See* Reid Decl. Ex. 2 at ¶ 26).  Step two of the grievance procedure provided for mediation of all employment-related claims.  (*Id*. at ¶ 27).

The parties participated in mediation on March 6, 2003, which concluded with the execution of a hand-written settlement term sheet ("Settlement Term Sheet"), which the parties

---

[6]     A copy of the "January 14, 2002 Separation Agreement," which is described at Am. Compl. ¶24 and incorporated therein by reference, is annexed to the Chapman Decl. as <u>Exhibit 3</u>.

contemplated would later be finalized in a formal agreement.[7]  The Settlement Term Sheet

provided in its entirety as follows:

> *In the matter of Callahan v CSFB, LLC*
>
> (1)     *CSFB agrees to pay Callahan the sum $735,000 in total settlement of all claims by Callahan against CSFB from his prior employment;*
>
> (2)      *This agreement is binding and the parties agree to execute a more formal settlement agreement and release, consistent with CSFB's standard settlement agreements;*
>
> (3)     *With regard to Exhibit of CSFB's Separation Agreement of Jan 14, 2002 item 1, the Retention Award, will be paid separate & apart from the total sum referred to above;*
>
> *item #2, Callahan's participation in the DLJ LBO incentive plan is fully vested[;]*
>
> *item #3, the Car has been purchased by Callahan;*
>
> *#4, Callahan's status in the PMD will be provided to him.*

(Reid Decl. Ex. 2 at ¶ 29; Chapman Decl. Ex. 4).

As contemplated by the Settlement Term Sheet, Credit Suisse provided Callahan with a

proposed formal settlement agreement on April 9, 2003 (the "April 9, 2003 Formal Separation

Agreement").[8]  Exhibit A to the proposed April 9, 2003 Formal Separation Agreement provided,

with respect to Callahan's "Retention Award":

> Pursuant to the terms of your Retention Agreement with DLJ dated September 27, 2000, you were granted a Retention award with an initial total value of $500,000.  According to the terms of the

---

[7]     A copy of the Settlement Term Sheet, which is quoted at Am. Compl. ¶ 29 and incorporated therein by reference, is annexed to the Chapman Decl. as <u>Exhibit 4</u>.

[8]     A copy of the April 9, 2003 Formal Separation Agreement, which is described at Am. Compl. ¶ 32 and incorporated therein by reference, is annexed to the Chapman Decl. as <u>Exhibit 5</u>.

> Retention Award, vesting of the July 1, 2001 tranche of Credit
> Suisse Group phantom shares (3,492 shares) occurred on such date
> and vesting of the July 1, 2002 and the July 1, 2003 tranches of the
> Credit Suisse Group phantom shares (6,984 shares) occurred on your
> Separation Date as the Company terminated your employment
> without cause.  Payment of this Retention Award is separate and
> apart from the total sum referred to in paragraph 3 of this Separation
> Agreement.

(Chapman Decl. Ex. 5, at Ex. A; *see also* Reid Decl. Ex. 2 at ¶ 33).

However, Callahan maintained that the April 9, 2003 Formal Separation Agreement failed to identify his PMD status as required under ¶ 4 of the handwritten Settlement Term Sheet. (*See* Reid Decl. Ex. 2 at ¶ 32; Chapman Decl. Ex. 4).  Callahan's counsel also subsequently forwarded to Credit Suisse a copy of the April 9, 2003 Formal Separation Agreement reflecting Callahan's proposed handwritten line edits.[9]  With respect to the provision for his Retention Award at Exhibit A, Callahan crossed out the phrase *"[as] the Company terminated your employment without Cause"* and replaced it with the handwritten emendation "[*as*] *You Retired*." (*See* Chapman Decl. Ex. 6, at Ex. A).  Credit Suisse never agreed to Callahan's proposed edits and, consequently, the April 9, 2003 Formal Separation Agreement was never fully executed by the parties.

Callahan fails to provide a legitimate reason for his failure to execute the 2003 Formal Separation Agreement.  He relies on a confusing and pretextual assertion that, during the second half of 2003, Callahan inquired as to whether anyone at Credit Suisse ever "*recommended* [Callahan] for inclusion among the persons offered the opportunity to invest in the PMD entity." (*See* Reid Decl. Ex. 2 at ¶ 35) (emphasis added).  Because this inquiry did not trigger any entitlement to payment under the PMD, Credit Suisse did not fully understand Callahan's

---

[9]      A copy of the April 9, 2003 Formal Agreement containing Callahan's handwritten line edits, as forwarded by his Counsel to Credit Suisse, is annexed to the Chapman Decl. as <u>Exhibit 6</u>.

inquiry, instead responding that Callahan was not entitled to payment under the PMD transaction.  (*See* Reid Decl. Ex. 2 at ¶ 39).  Thereafter, Callahan allegedly repeated his inquiry as to whether he was ever recommended for inclusion in the PMD transaction.  (*See* Reid Decl. Ex. 2 at ¶ 43).  Credit Suisse noted its confusion when Anita Raman responded on February 11, 2004, that Callahan had "not clearly communicated" his informational request to the Company.  (*Id.*)  Callahan misrepresents this reasonable misunderstanding as a dilatory tactic allegedly demonstrating the Company's "false and misleading" representations.  (*See* Reid Decl. Ex. 2 at ¶¶ 43-44).  Furthermore, Callahan cites a handful of references to his half-hearted attempts in 2004 to further confirm his PMD status but, incredibly, cites no attempts to resolve the dispute for the *two-year* period from December 2004 through December 2006.  (*See* Reid Decl. Ex. 2 at ¶¶ 51-52).  In December 2006, Callahan claims that his attorney contacted Michael Carlinksy, counsel for Credit Suisse, to request "information relating to the PMD/NOVEON investment." (*See* Reid Decl. Ex. 2 at ¶ 52).  According to Callahan, Credit Suisse never responded, but Callahan inexplicably failed to contact the Company again until January 2009, *more than two years later*.  (*See* Reid Decl. Ex. 2 at ¶ 54).  Thus, during a four-year period, Callahan and his representatives purportedly made only one fleeting attempt to resolve the matter.

On January 20, 2009, Callahan finally came back to Credit Suisse, agreeing to drop his insistence on PMD compensation if Credit Suisse would pay the other sums set forth in the Settlement Term Sheet and in the April 9, 2003 Formal Separation Agreement that he had previously rejected.  (*See* Reid Decl. Ex. 2 at ¶ 54).  On April 7, 2009, Credit Suisse sent Callahan a new separation agreement (the "April 7, 2009 Formal Separation Agreement").[10]

---

[10]    A copy of the April 7, 2009 Separation Agreement, which is described at Am. Compl. ¶ 56 and incorporated therein by reference, is annexed to the Chapman Decl. as <u>Exhibit 7</u>.

Exhibit A to the new separation agreement provided, with respect to Callahan's "Retention

Award:"

> Pursuant to the terms of your Retention Agreement with DLJ dated
> September 27, 2000, you were granted a Retention award with an
> initial total value of $5,000.  According to the terms of the Retention
> Award, vesting of the July 1, 2001 tranche of Credit Suisse Group
> phantom shares (3,492 shares) has already occurred.  The vesting of
> the July 1, 2002 and the July 1, 2003 tranches of the Credit Suisse
> Group phantom shares (6,984 shares) occurred on your Separation
> Date as the Company terminated your employment without cause.
> You were entitled to the settlement of these Awards within 120 days
> of your Separation Date.

(Chapman Decl. Ex. 7; *see* Reid Decl. Ex. 2 at ¶ 56).

The April 7, 2009 Formal Separation Agreement also provided, with respect to the

manner of acceptance, that Callahan would:

> have twenty-one (21) days from your receipt of this Separation
> Agreement to review and consider it, and to consult with an attorney
> regarding the terms and effect of this Separation Agreement.  You
> will have seven (7) days after your execution of this Separation
> Agreement to revoke your acceptance.  Any revocation must be in
> writing and received by the undersigned by 5:00 p.m. on or before
> the seventh day after this Separation Agreement is executed by you.
> If the Bank does not receive written revocation from you within such
> seven-day period, this Separation Agreement shall become effective
> upon expiration of such seven-day period.

(Chapman Decl. Ex. 7 ¶ 12).  Thus, Callahan had until April 28, 2009 to execute and return the

April 7, 2009 Formal Separation Agreement.  (*Id.*).

On April 13, 2009, Callahan's attorney, Benjamin D. Steiner, sent a letter by email to

Credit Suisse.[11]  The letter stated in part that Steiner had forwarded a copy of the April 7, 2009

Formal Separation Agreement to Callahan, but it noted that "[u]nfortunately, he is out of the

country at the moment and we have only communicated electronically."  (Chapman Decl. Ex. 8).

---

[11]     A copy of the April 13, 2009 letter, which is apparently described at Am. Compl. ¶ 57
and incorporated therein by reference, is annexed to the Chapman Decl. as <u>Exhibit 8</u>.

Steiner further stated that "Mr. Callahan is in full agreement with the body of the letter, however, he asked two or three questions regarding Exhibit A." (*Id.*).  These included Callahan's belief that the value of the Retention Award stated in Exhibit A should be "$500,000" rather than "$5,000." (*Id.*).  Callahan also requested confirmation that the Retention Award was deposited in an account that had been credited for any subsequent stock splits since the original date of the award. (*Id.*).  Finally, Callahan requested that the following sentence be added: "Payment of this Retention Award is separate and apart from the total sum referred to in Paragraph 2 of this Separation Agreement." (*Id.*).  Steiner's letter concluded as follows:  "*If we can get confirmation of these issues*, Mr. Callahan *will* sign the Separation Agreement upon his return to the country next week." (*Id.*) (emphasis added).

Similarly, on May 7, 2009, more than three weeks later (and more than one week after the deadline to accept the April 7, 2009 Formal Separation Agreement had passed), Steiner sent an email to Credit Suisse, reiterating Callahan's position with respect to the value of the Retention Award stated in Exhibit A, and requesting that Credit Suisse "check again with your sources and see whether this is correct" because, "*[i]f so,* we are *ready to sign* and get this over with." (emphasis added).[12]

On May 11, 2009 – 13 days after the April 28, 2009 deadline – Credit Suisse withdrew the April 7, 2009 Formal Separation Agreement that Callahan failed to accept and proposed a

---

[12]     A copy of Steiner's May 7, 2009 email to Credit Suisse is annexed to the Chapman Decl. as <u>Exhibit 9</u>.

new separation agreement (the "May 11, 2009 Formal Separation Agreement"),[13] which

amended the Retention Award set forth at Exhibit A as follows:

> Pursuant to the terms of your Retention Agreement with DLJ dated
> September 27, 2000, you were granted a Retention award with an
> initial total value of $500,000.  According to the terms of the
> Retention Award, the July 1, 2001 tranche of Credit Suisse Group
> phantom shares under the Retention Award has vested.  The July 1,
> 2002 and the July 1, 2003 tranches of the Credit Suisse Group
> phantom shares (6,984 shares) did not vest and were cancelled as a
> result of your retirement from the Bank, pursuant to the terms of the
> relevant plan documents.

(Chapman Decl. Ex. 10; *see* Reid Decl. Ex. 2 at ¶ 59).

On May 21, 2009 – 23 days after April 28 – Steiner sent a letter to Credit Suisse,

rejecting the May 11, 2009 Formal Separation Agreement and enclosing a copy of the April 7,

2009 Formal Separation Agreement that Callahan had allegedly signed and dated April 15,

2009.[14]  Steiner's May 21 letter did not explain how Callahan could have signed the April 7,

2009 Formal Separation Agreement on April 15, in light of Steiner's letter dated Monday, April

13, 2009, representing that Callahan would be out of the Country until "next week."  (*Compare*

Chapman Decl. Ex. 8, *with* Ex. 11).  Nor did Steiner's letter explain how the April 7, 2009

Formal Separation Agreement could have been signed on April 15, 2009, when on May 7, 2009,

Steiner indicated that "if" a condition concerning his Retention Award were agreed to, his client

was merely "ready to sign" (and presumably had not already done so).  (*See id.* Ex. 9).

Moreover, the executed April 7, 2009 Formal Separation Agreement also reflected Callahan's

---

[13]    A copy of the May 11, 2009 Formal Separation Agreement, which is described at Am.
Compl. ¶ 59 (the "Attempted Revision") and incorporated therein by reference, is annexed to the
Chapman Decl. as <u>Exhibit 10</u>.

[14]    A copy of the May 21, 2009 letter enclosing an executed copy of the April 7, 2009
Formal Separation Agreement, and rejecting the May 11, 2009 Formal Separation Agreement (as
described at Am. Compl. ¶ 60 and incorporated therein by reference), is annexed to the Chapman
Decl. as <u>Exhibit 11</u>.

unilateral handwritten "correction" of the Retention Award provision, which replaced the initial

total value of the Award stated at "$5,000" with the value "$500,000."  (*See id.* Ex. 11; Reid

Decl. Ex. 2 at ¶¶ 57-58).

Credit Suisse maintained that it was not bound by the proposed April 7, 2009 Formal

Separation Agreement that Callahan purportedly signed on April 15, 2009, because Callahan's

"correction" of the apparent "typographical error" on Exhibit A constituted his rejection of that

agreement.  (*See* Chapman Decl. Ex. 11; Reid Decl. Ex. 2 at ¶ 61).  Moreover, the proposed

April 7, 2009 Formal Separation Agreement was withdrawn after Callahan failed to

communicate his acceptance for 34 days (thus plainly missing the 21-day deadline of April 28,

2009) and was subsequently formally withdrawn – and replaced by the proposed May 11, 2009

Formal Separation Agreement – ten days *before* Callahan's purported "acceptance" of the April

7, 2009 Formal Separation Agreement was ever communicated to Credit Suisse.

Thus, at the time of Callahan's purported acceptance of the April 7, 2009 Formal

Separation Agreement, that agreement had been rejected by Callahan and subsequently also

revoked by Credit Suisse (via the subsequently offered May 11, 2009 Formal Separation

Agreement) and was no longer pending as an offer.  Therefore, the only offer then available for

Callahan to accept was the May 11, 2009 Formal Separation Agreement.  It is undisputed that

Callahan never accepted the May 11, 2009 Formal Separation Agreement.

## PROCEDURAL HISTORY

On June 11, 2010, Plaintiff filed a Complaint in the Southern District of New York,

alleging claims for breach of contract for both the April 7, 2009 Formal Separation Agreement

and the April 9, 2003 Formal Separation Agreement, as well as breach of the duty of good faith

and fair dealing related to the April 9, 2003 Formal Separation Agreement.  While Plaintiff's

breach of contract claim for April 7, 2009 Formal Separation Agreement survived Defendants'
motion to dismiss, the Court dismissed the remaining claims on statute of limitations grounds.

Specifically, Plaintiff predictably failed to mention the statute of limitations in his
Complaint, but insinuated that the April 7, 2009 Formal Separation Agreement constituted a
separate breach of the April 9, 2003 Formal Separation Agreement that restarted the limitations
period.  (*See* Reid Decl. Ex. 3 at ¶¶ 50, 57).[15]  Plaintiff also misrepresented the Company's
dealings with Callahan, claiming that it had breached its duty of good faith "by using dilatory
tactics to drag the negotiation" out, thereby further prohibiting use of the statute of limitations
defense.  (*See* Reid Decl. Ex. 3 at ¶ 56).  On July 30, 2010, Credit Suisse filed a motion to
dismiss Plaintiff's Complaint in its entirety, with prejudice.  With respect to Plaintiff's claims
arising under the April 9, 2003 Formal Separation Agreement, Defendants moved to dismiss the
claims on statute of limitations grounds.  (*See* Reid Decl. Ex. 4 at 15-16).[16]  In opposition,
Plaintiff argued that his claims under the April 9, 2003 Formal Separation Agreement "actually
accrued within the six-year limitations period," arguing that (1) the contract required "continuing
performance over a period of time," and (2) that the date of Defendants' alleged breach did not
occur until at least June 11, 2004, conveniently the date exactly six years before Plaintiff filed his
Complaint.  (*See* Reid Decl. Ex. 5 at 13-14).[17]  Alternatively, Plaintiff argued that Defendants
had tolled the statute of limitations in issuing the April 7, 2009 Formal Separation Agreement

---

[15]     A copy of the Complaint is annexed to the Reid Decl. as <u>Exhibit 3</u>.

[16]     A copy of the Memorandum of Law in Support of Defendants' Motion to Dismiss, dated
July 30, 2010, is annexed to the Reid Decl. as <u>Exhibit 4</u>.

[17]     A copy of Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to
Dismiss, dated August 20, 2010 is annexed to the Reid Decl. as <u>Exhibit 5</u>.

and that Credit Suisse was equitably estopped from asserting the statute of limitations as a defense because it had engaged in bad faith conduct.  (*See* Reid Decl. Ex. 5 at 14-19).

On August 18, 2011, the Court granted Defendants' motion to dismiss Plaintiff's claims for breach of contract and the duty of good faith and fair dealing under the April 9, 2003 Formal Separation Agreement because those claims were time-barred.  In denying Plaintiff's claims arising under the April 9, 2003 Formal Separation Agreement, this Court noted that the purported breach of this agreement "clearly occurred in April 2003."  (Reid Decl. Ex. 1 at 15).  This Court found all of Plaintiff's arguments to extend the date of breach "unpersuasive."  (*Id.*).  Plaintiff obviously chose June 11, 2004 as the date of the breach for the sole purpose of fitting his claims within the statute of limitations because this arbitrary date had no other significance.  The Court also disagreed with Plaintiff's assertion that the 2009 negotiations "triggered a second breach" of the April 9, 2003 Formal Separation Agreement, noting that "allowing successive breaches to restart the statute of limitations would allow Plaintiff to extend the statute of limitations into infinity by persisting in unsuccessful negotiations."  (*Id.* at 15-16).  Furthermore, the Court denied Plaintiff's argument that Defendants tolled the statute or that the Company should be equitably estopped from asserting the statute of limitations as a defense, explaining that "Plaintiff was clearly on notice of Defendants' breach long before June 11, 2004 and failed to sue for *more than seven years*."  (*Id.* at 17-18) (emphasis added).  Thus, the Court denied Plaintiff's claims for breach of contract and breach of the duty of good faith and fair dealing pursuant to the April 9, 2003 Formal Separation Agreement because those claims were time-barred.[18]

---

[18]    Plaintiff's claim for breach of the implied covenant of good faith and fair dealing was time-barred because the underlying breach of contract claim was similarly barred, as "a claim for violation of the implied covenant of good faith and fair dealing is duplicative of the breach of contract claim."  (Reid Decl. Ex. 1 at 18).  Thus, after finding that Plaintiff failed to bring his

Nevertheless, on October 3, 2011, Plaintiff filed an Amended Complaint with this Court, realleging the same claims that were dismissed previously on statute of limitations grounds, and bringing a new constructive trust claim that is unquestionably time-barred,[19] and asserting a duplicative claim for the breach of good faith and fair dealing under the April 7, 2009 Formal Separation Agreement that must be dismissed pursuant to New York law.  Nothing in Plaintiff's Amended Complaint changes the fact that Callahan failed to bring the time-barred claims within the requisite statute of limitations and, pursuant to the Court's August 18, 2011 Order, this Court should once again dismiss all of the time-barred claims on statute of limitations grounds.  This Court should also dismiss Plaintiff's additional breach of the duty of good faith and fair dealing claim as duplicative of the April 7, 2009 Formal Separation Agreement breach of contract claim.

## ARGUMENT

Pursuant to Fed. R. Civ. P. 12(b)(6), a complaint should be dismissed if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court clarified this pleading obligation, explaining that to survive a motion to dismiss: "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face . . . .  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted

---

breach of contract claim within the statute of limitations, the Court was compelled to dismiss the duplicative implied covenant claim.  (*Id.* at 18-19).

[19]     Plaintiff's new time-barred claim is for the imposition of a constructive trust based on the 2003 Separation Proposal.  Plaintiff also asserts a claim for the breach of the duty of good faith and fair dealing from the April 7, 2009 Formal Separation Agreement.  Although Plaintiff now asserts seven (7) causes of action, these are the only substantively new claims because the others are merely duplicate claims that Plaintiff chose to number separately (i.e. two breach of contract claims under the April 9, 2003 Formal Separation Agreement, two breach of the duty of good faith and fair dealing under the April 9, 2003 Formal Separation Agreement, etc.).

unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* at 1949 (quotations omitted).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Id.* at 1949-50 (citation omitted).  The "pleading standard Rule 8 announces . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation . . . . Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  *Id.* (citations omitted).

Where, as here, the "facts" are inadequate and inconsistent, and the complaint is laden with conclusions of law that are plainly wrong, Plaintiff has not "nudged [his] claims across the line from conceivable to plausible," and, as set forth below, has not demonstrated an entitlement to relief on any of his claims.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Additionally, it bears noting that in its August 18, 2011 Order, the Court already dismissed Plaintiff's claims arising out of the April 9, 2003 Formal Separation Agreement. Thus, the Court's holding must be considered law of the case and Plaintiff is not entitled to argue to the contrary at this juncture.  *See Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944, 953 (2d Cir. 1964) ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.").  Both Defendants and Plaintiff have already briefed the timeliness of Plaintiff's breach of contract and the implied covenant of good faith and fair dealing pursuant to the April 9, 2003 Formal Separation Agreement.  Rearguing these points constitutes a waste of party and judicial resources.  Nevertheless, Defendants will again argue as to the untimeliness of Plaintiff's claims.

14

I.  **PLAINTIFF'S SECOND, THIRD, FOURTH AND FIFTH CLAIMS, FOR BREACH OF THE SETTLEMENT TERM SHEET AND BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING WITH RESPECT THERETO, ARE BARRED BY THE SIX-YEAR STATUTE OF LIMITATIONS**

"To prevail on a breach of contract claim under New York law, a plaintiff must prove (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *See*, *e.g.*, *Terwilliger v. Terwilliger*, 206 F.3d 240, 246 (2d Cir. 2000) (internal quotation marks and citations omitted).  Moreover, under New York law, an alleged "breach of the implied duty of good faith and fair dealing is [likewise] a breach of the underlying contract." *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004) (citations and internal quotation omitted).  Consequently, a "cause of action for breach of an implied duty of good faith and fair dealing . . . [is] properly dismissed for lack of a valid and binding contract from which such a duty would arise." *Beekman Inv. Partners, L.P. v. Alene Candles, Inc.*, No. 05 Civ. 8746 (DLC), 2006 U.S. Dist. LEXIS 5341, at *19 (S.D.N.Y. 2006) (citing *American-European Art Assocs., Inc. v. Trend Galleries, Inc.*, 641 N.Y.S.2d 835, 836 (1st Dep't 1996)); s*ee also Sheth v. New York Life Ins. Co*., 273 A.D.2d 72, 73 (1st Dep't 2000) ("cause of action for breach of the implied covenant of good faith and fair dealing . . . may not be used as a substitute for a nonviable claim of breach of contract"); *Lakeville Pace Mech., Inc. v. Elmar Realty Corp*., 276 A.D.2d 673, 676 (2d Dep't 2000) ("there can be no covenant of good faith and fair dealing implied where there is no contract").

Callahan's claims for breach of contract and/or breach of the covenant of good faith and fair dealing in connection with the parties' 2003 Settlement Term Sheet fail to state a valid claim and should be dismissed under Rule 12(b)(6).  Even if the Settlement Term Sheet was an enforceable contract, it was allegedly "breached" by Credit Suisse's proffer of the purportedly non-conforming April 9, 2003 Formal Separation Agreement, more than seven years before

Callahan filed his Complaint.  This Court agreed with this exact argument set forth in

Defendants' motion to dismiss Plaintiff's original Complaint.  Nothing in the Amended

Complaint alters the fact that Plaintiff filed this case more than seven years after the alleged

breach.  The statue of limitations on the April 9, 2003 Formal Separation Agreement claims

expired more than one year before Callahan filed suit, providing an independent basis for

dismissal of the Second, Third, Fourth and Fifth Claims under Rule 12(b)(6).[20]

### A.    Plaintiff's Breach of Contract Claims for the April 9, 2003 Formal Separation Agreement are Barred by the Statute of Limitations

Pursuant to CPLR § 213, breach of contract claims are subject to a six-year statute of

limitations.  The six-year limitations period begins to run at the time of the breach, regardless of

whether the plaintiff was acting in good faith and/or was unaware of the breach until a later date.

*See Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 403 (N.Y. 1993).  Although the

lapse of a limitations period is an affirmative defense that a defendant must plead and prove (*see*

Fed. R. Civ. P. 8(c)(1)), a defendant may also raise this affirmative defense "in a pre-answer

Rule 12(b)(6) motion if the defense appears on the face of the complaint."  *Staehr v. Hartford*

*Fin. Servs. Group*, 547 F.3d 406, 426 (2d Cir. 2008) (citing *McKenna v. Wright*, 386 F.3d 432,

436 (2d Cir. 2004)); *see also* 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL

PRACTICE AND PROCEDURE § 1226 (3d ed. 2004) ("[T]he current trend in the cases is to allow

---

[20]      In its Motion to Dismiss Plaintiff's Complaint filed on July 30, 2010, Defendants also
moved to dismiss Plaintiff's claims arising from the April 9, 2003 Formal Separation Agreement
because the Settlement Term Sheet itself did not constitute an enforceable contract, and thus
could not form the basis for Callahan's purported claims.  The Court, however, did not decide
the merits of this argument in her August 18, 2011 Order because the Court dismissed the claims
on statute of limitations grounds.  Therefore, Defendants do not include that argument in this
Motion, as the statute of limitations argument suffices to dismiss these same claims yet again.
*See* Defendants' Motion to Dismiss Plaintiff's Complaint at Part I.A for analysis on the
unenforceability of the Settlement Term Sheet as a binding contract.

[the statute of limitations defense] to be raised by a motion to dismiss under Rule 12(b)(6) when the defect appears on the face of the complaint.").

Here, even if the Settlement Term Sheet was a "fully binding preliminary agreement" amounting to an enforceable contract, the alleged "breach" of the Settlement Term Sheet would have occurred when Credit Suisse proffered the allegedly non-conforming April 9, 2003 Formal Separation Agreement.  (*See* Chapman Decl. Ex. 5 and Ex. 6; Reid Decl. Ex. 2 at ¶¶ 32-33). Indeed, Callahan alleges in the Amended Complaint, just as he did in the original Complaint, that the April 9, 2003 Formal Separation Agreement failed to sufficiently identify his status in the PMD matter – in violation of ¶ 4 of the Settlement Term Sheet.  (*Id.*).  Thus, even if Callahan's subsequent course of negotiations do not demonstrate that the Settlement Term Sheet was merely a binding preliminary commitment and not an enforceable contract, the six-year statute of limitations for a cause of action based on the purported breach of the Settlement Term Sheet would have expired on April 9, 2009 – six years after Credit Suisse provided Callahan with the April 9, 2003 Formal Separation Agreement and more than one year prior to Callahan's filing of his original federal Complaint.  Therefore, Plaintiff's Second and Third Claims, for breach of the April 9, 2003 Formal Separation Agreement should be dismissed as time-barred.

Credit Suisse made this argument in its original motion to dismiss, and the Court agreed, denying Plaintiff's claims for breach of the April 9, 2003 Formal Separation Agreement on statute of limitations grounds.  First, the Court determined that Defendants' breach of the April 9, 2003 Formal Separation Agreement, assuming there was a breach at all, occurred in April 2003. (Reid Decl. Ex. 1 at 15).  Regardless of whether the 2003 Mediation Agreement itself constituted a binding contract, Defendants' supposed actions through negotiations with Plaintiff were "sufficient to put Plaintiff on notice that Defendants were using 'using bad faith conduct to force

[Plaintiff] into submission.'"  (*Id.* (citing Reid Decl. Ex. 3 at ¶ 2)).  Second, the Court dismissed Plaintiff's argument that the date of the breach extended to June 11, 2004, terming Plaintiff's attempt as "unpersuasive."  (*Id.*).  Because "the breach clearly occurred in April 2003," it was not necessary to determine what a "reasonable term" for Defendants' performance would have been, and there were no "continuing negotiations" that could extend the date of the breach. Along those same lines, Defendants' actions did not extend the statute of limitations because "the duty to formalize [the agreement] did not have a fixed duration [and, therefore,] allowing successive breaches to restart the statute of limitations would allow Plaintiff to extend the statute of limitations into infinity by persisting in unsuccessful negotiations."  (*Id.* at 15-16).  Under similar rationale, the Court denied Plaintiff's tolling arguments under the New York General Obligations Law.  (*Id.* at 16-17).  Lastly, Plaintiff's equitable estoppel argument failed because Plaintiff "certainly possessed sufficient information to inquire as to whether Defendants had breached the agreement long before the expiration of the statute of limitations.  Plaintiff was clearly on notice of Defendants' breach long before June 11, 2004 and failed to sue for more than seven years." (Reid Decl. Ex. 1 at 17-18).  Therefore, the Court dismissed Plaintiff's breach of contract claim related to the April 9, 2003 Formal Separation Agreement.  (*Id.* at 18).

Despite the Court's unwavering denial of Plaintiff's feeble attempts to extend the statute of limitations, Callahan pled the April 9, 2003 Formal Separation Agreement breach of contract claim yet again in his Amended Complaint.  Callahan relies on arguments that he propounded in his Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint, but now asserts these same unsuccessful arguments in his Amended Complaint.  The Court dismissed these claims and rejected Plaintiff's arguments in support of these claims in its August 18, 2011 Order and the Court should do so again here.  Callahan's attempt to resuscitate his time-barred claims fails yet

again, since nothing contained within the Amended Complaint changes the untimely filing of these breach of contract claims.

In his Second Claim in the Amended Complaint, Callahan self-servingly asserts that "Credit Suisse breached the [April 9, 2003 Formal Separation Agreement] through its continuous course of conduct, through at least June 11, 2004, in misrepresenting . . . and otherwise delaying and failing to provide Callahan with information sufficient for Callahan to determine whether his name had been recommended for inclusion" in the PMD.  (Reid Decl. Ex. 2 at ¶ 73). Furthermore, Plaintiff claims that "Credit Suisse's misrepresentations . . . caused Callahan to refrain from taking legal action to enforce the [April 9, 2003 Formal Separation Agreement] through and including June 11, 2004."  (*Id.* at ¶ 76).  Callahan's allegations in the Amended Complaint fall far short of extending the breach to June 11, 2004 – exactly six years prior to the filing of his Complaint.  In fact, Callahan alleges only two attempts to confirm his status after June 11, 2004.  First, Callahan claims to have met briefly in December 2004 with the head of Credit Suisse's investment banking group, but that Credit Suisse was unable to confirm whether Callahan had been recommended for inclusion in the PMD.  (*Id.* at ¶ 51).  Second, in December 2006, Callahan's attorney allegedly requested information regarding Callahan's PMD status, but never followed up with the Company after Credit Suisse purportedly failed to respond.  (*Id.* at ¶ 52).

Neither of these discrete events is sufficient to extend the breach.  As the Court noted in its August 18, 2011 Order, "the breach clearly occurred in April 2003," and Defendants' alleged conduct was sufficient to put Plaintiff on notice of the breach.  (Reid Decl. Ex. 1 at 15).  This breach of contract case was not complex and the Court saw no room to argue for an extension of the statute of limitations.  Nothing pleaded in the Amended Complaint alters the Court's analysis

because, as stated *inter alia*, the statute began to run at the time of the alleged breach in April

2003, regardless of whether the plaintiff was acting in good faith and/or was unaware of the

breach until a later date.

Alternatively, Callahan bases his Second Claim on the fact that the breach of the April 9,

2003 Formal Separation Agreement did not "finally [become] clear" until after June 11, 2004.

(Reid Decl. Ex. 2 at ¶ 74).  A breach of contract claim, however, accrues when the actual breach

occurs.  *See Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 403 (N.Y. 1993).  Thus,

Callahan's attempt to extend the date of the breach fails yet again, and the Court should dismiss

Plaintiff's Second Claim as it did the first time Plaintiff asserted the claim.

Lastly, Callahan argues that Credit Suisse is equitably estopped from asserting the statute

of limitations as a defense because the Company proffered the April 7, 2009 Formal Separation

Agreement "two days before the expiration of that limitations period," and that this induced

"Callahan into refraining from filing suit to enforce" the April 9, 2003 Formal Separation

Agreement.  (Reid Decl. Ex. 2 at ¶ 77).  Callahan relies on this event alone, two days before the

expiration of the statute of limitations, in asserting his equitable estoppel argument.  This

assertion does absolutely nothing to change the legitimacy of Plaintiff's equitable estoppel

argument, especially in light of the Court's August 18, 2011 Order.  Therein, the Court noted that

"Plaintiff was clearly on notice of Defendants' breach long before June 11, 2004 and failed to

sue for more than seven years."  (Reid Decl. Ex. 1 at 17-18).  Thus, the Court denied Plaintiff's

equitable estoppel argument.  (*Id.*).  Here, Plaintiff attempts to revive his equitable estoppel

argument by alleging improper conduct on the part of Credit Suisse *two days* before the

expiration of the limitations period.  As the Court astutely highlights, Plaintiff failed to file a

Complaint until more than *seven years* after the alleged breach, and Plaintiff's assertion that an

event *two days* prior to the end of the limitations period prevented him from filing suit is woefully inadequate to support his equitable estoppel argument. Therefore, the Court should dismiss Plaintiff's equitable estoppel argument and, in turn, grant Defendants' motion to dismiss Plaintiff's Second Claim.

The Court should deny Callahan's Third Claim for Relief, also a breach of contract claim pursuant to the April 9, 2003 Formal Separation Agreement, based on a similar rationale. Specifically, Callahan alleges, as he did in his Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint, that the Attempted Revision "constituted a separate and independent breach" of the April 7, 2009 Formal Separation Agreement. (Reid Decl. Ex. 2 at ¶ 82). The Court disagreed "that the 2009 negotiations triggered a second breach of the [April 9, 2003 Formal Separation Agreement's] duty to formalize and that this restarts the limitations period." (Reid Decl. Ex. 1 at 15). The Court held that "allowing successive breaches to restart the statute of limitations would allow Plaintiff to extend the statute of limitations into infinity by persisting in unsuccessful negotiations." (*Id.* at 16). Nothing contained in Plaintiff's Amended Complaint should alter this analysis, as Plaintiff pleads largely the same facts and reargues the same unsuccessful arguments in a desperate attempt to breathe new life into his previously dismissed breach of contract claim. Therefore, the Court should dismiss Plaintiff's Third Claim in the Amended Complaint for the same reasons it dismissed the breach of contract claim pursuant to the April 9, 2003 Formal Separation Agreement in its August 18, 2011 Order.

**B.      Plaintiff's Breach of the Duty of Good Faith and Fair Dealing for the April 9, 2003 Formal Separation Agreement are Barred by the Statute of Limitations**

The Court should dismiss Plaintiff's Fourth and Fifth Claims for Relief, alleging breach of the duty of good faith and fair dealing pursuant to the April 9, 2003 Formal Separation Agreement, because Plaintiff brought these claims after the statute of limitations had already

expired.  The same six-year limitations period that applies to breach of contract claims also applies to claims for breach of the implied covenant of good faith and fair dealing.  *See, e.g.*, *Malone v. Bayerische Hypo-Und Vereins Bank*, Nos. 08 Civ. 7277 (PGG), 09 Civ. 3676 (PGG), 2010 U.S. Dist. LEXIS 9529, at *12-13 (S.D.N.Y. Feb. 4, 2010) ("The claim for breach of the covenant of good faith and fair dealing is grounded in contract and likewise has a limitations period of six years" pursuant to CPLR § 213(2).).  As the Court pointed out in its August 18, 2011 Order, "a claim for the violation of the implied covenant of good faith and fair dealing is duplicative of the breach of contract claim.  (Reid Decl. Ex. 1 at 18) (citing *ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234, 243-44 (S.D.N.Y. 1997); *FCOF UB Secs. LLC v. Morequity, Inc.*, 663 F. Supp. 2d 224, 231-32 (S.D.N.Y. 2009)).  Therefore, the Court dismissed Plaintiff's breach of the duty of good faith and fair dealing pursuant to the April 9, 2003 Formal Separation Agreement because the claim was "duplicative of Plaintiff's claim for breach" of that agreement and Plaintiff brought the claim after expiration of the six-year statute of limitations.  (*Id.*).  The Court should dismiss Plaintiff's Fourth and Fifth Claims for Relief in his Amended Complaint under the same rationale.

## II.   PLAINTIFF'S SIXTH CLAIM FOR BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING WITH RESPECT TO THE 2009 AGREEMENT IS DUPLICATIVE OF THE CORRESPONDING BREACH OF CONTRACT CLAIM

Plaintiff's sixth cause of action is duplicative of the first cause of action for breach of the April 7, 2009 Formal Separation Agreement and, therefore, must be dismissed in accordance with New York law.  It is well established that "New York law requires dismissal of an implied covenant claim where the claim derives from the same set of facts as the breach of contract claim."  *FCOF UB Secs. LLC v. MorEquity, Inc.*, 663 F. Supp. 2d 224, 231-32 (S.D.N.Y. 2009) (citing *Simon v. Unum Group*, No. 07 Civ. 11426, 2008 WL 2477471, at *4 (S.D.N.Y. June 19,

2008); *Argonaut P'ship L.P. v. Bancomer, S.A.*, Nos. 96 Civ. 2222, 00 Civ. 4244, 2001 WL

585525, at \*3 (S.D.N.Y. May 30, 2001)); *see also ICD Holdings S.A. v. Frankel*, 976 F. Supp.

234, 243-44 (S.D.N.Y. 1997) (dismissing breach of implied covenant claim as "redundant"

where "conduct allegedly violating the implied covenant is also the predicate" for the underlying

breach of contract claim).  Clearly, Plaintiff's claim of breach of the duty of good faith and fair

dealing under the April 7, 2009 Formal Separation Agreement derives from the same facts as the

corresponding breach of contract claim.  Plaintiff asserted his sixth cause of action for the breach

of the duty of good faith and fair dealing with respect to the April 7, 2009 Formal Separation

Agreement "in the alternative" to the corresponding breach of contract claim, thereby

recognizing its duplicative nature.  Furthermore, this Court in dismissing Plaintiff's claim for the

breach of the duty of good faith and fair dealing pursuant to the April 9, 2003 Formal Separation

Agreement, noted that dismissal was appropriate "[b]ecause Plaintiff's claim that Defendants

violated the [April 9, 2003 Formal Separation Agreement's] implied covenant of good faith and

faith dealing is duplicative [and] is also barred by the statute of limitations."  Therefore, the

Court recognized that claims for the breach of the duty of good faith and fair dealing are

duplicative and cited to several cases holding that such claims are duplicative and must be

dismissed under New York law.  (*See* Reid Decl. Ex. 1 at 18) (citing *ICD Holdings S.A.*, 976 F.

Supp. at 243-44; *FCOF UB Secs. LLC*, 663 F. Supp. 2d at 231-32).  Thus, the Court should

dismiss Plaintiff's sixth cause of action as duplicative, consistent with established precedent and

its prior Order.

### III.   PLAINTIFF'S SEVENTH CLAIM FOR IMPOSITION OF A CONSTRUCTIVE TRUST IS BARRED BY THE SIX-YEAR STATUTE OF LIMITATIONS

The Court should dismiss Plaintiff's Seventh Claim, alleging the imposition of a

constructive trust, because the claim is time-barred.  Causes of action for imposition of a

constructive trust adhere to a six-year statute of limitations that "begins to accrue upon the occurrence of the wrongful act giving rise to a duty of restitution and not from the time the facts constituting the fraud are discovered." *Auffermann v. Distl*, 867 N.Y.S.2d 527, 528 (2d Dep't 2008) (citations and internal quotation marks omitted) (dismissing constructive trust claim on statute of limitations grounds); *see also Harding v. Naseman*, No. 07 Cv. 8767 (RPP), 2008 WL 4900562, at *4 (S.D.N.Y. Nov. 14, 2008) (citing *In re Wallace*, 595 N.Y.S.2d 572 (2d Dep't 1993)); *Quiroga v. Fall River Music, Inc.*, No. 93 CIV. 3914 (RPP), 1998 WL 851574, at *34 (S.D.N.Y. Dec. 7, 1998).  Where the plaintiff claims that the defendant wrongfully withheld property after lawfully acquiring it, the date the defendant allegedly breached the agreement to transfer the property is the date when the statute of limitations begins to accrue.  *Id.*  The date that the defendant breaches the underlying agreement starts the clock on the statute of limitations rather than the date when the plaintiff learns of the breach or wrongful conduct.

In this case, Plaintiff claims that the imposition of a constructive trust "did not accrue until after June 11, 2004, when it finally became clear that Credit Suisse would not provide to Callahan his status in the PMD."  (Reid Decl. Ex. 2 at ¶ 114).  Although Plaintiff's convenient misstatement of the law would certainly help his cause, it is an inaccurate representation of controlling law governing imposition of constructive trusts.  The Second Department has held that the statute of limitations does not begin to run when the plaintiff discovers the facts leading to imposition of the constructive trust, but rather when the breach of the underlying agreement occurs.  *Auffermann*, 867 N.Y.S.2d at 528.  As stated *inter alia*, the breach of the April 9, 2003 Formal Separation Agreement occurred in April 2003.  The Court agreed that this was the date of the breach in its August 18, 2011 Order.   (Reid Decl. Ex. 1 at 14-15).  Plaintiff's claim for imposition of a constructive trust accrued in April 2003, not at some unspecified date after June

11, 2004 when the breach allegedly "finally became clear" to Callahan.  Therefore, the Court should dismiss Plaintiff's Seventh Claim for Relief as time-barred.

<u>**CONCLUSION**</u>

For all the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's Amended Complaint in part and with prejudice.

Dated: October 28, 2011
New York, New York

Respectfully submitted,

**THOMPSON WIGDOR LLP**

By: _____
Douglas H. Wigdor
David K. Reid

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@thompsonwigdor.com
dreid@thompsonwigdor.com

*COUNSEL FOR DEFENDANTS CREDIT SUISSE (USA), INC. and CREDIT SUISSE SECURITIES (USA) LLC.*