# Exhibit 5

DRAFT 4/9/2003
THIS IS <u>NOT</u> AN OFFER - SUBJECT TO INTERNAL APPROVAL

April 9, 2003

Patrick J. Callahan Jr.
32 Woodley Road
Winnetka, IL  60093

Dear Pat:

This letter agreement (the "Separation Agreement") will confirm the terms of the cessation of your employment with Credit Suisse First Boston Corporation and its affiliates (including Donaldson Lufkin & Jenrette Securities Corporation ("DLJ")) ("CSFB"; CSFB, together with Credit Suisse Group and all its other direct and indirect subsidiaries, and its and their successors, past, current or future shareholders, directors, Managing Directors, Directors, officers, and employees, and any one else connected with them, is the "Company")[1].

1. Pursuant to the letter to you dated December 7, 2001, effective as of December 31, 2001 (the "Separation Date"), your Managing Director-Special Advisor ("MDSA") contract expired and you retired from your employment with the Company.

2. As soon as practicable following your Separation Date, CSFB will make payment to you for any accrued but unused vacation days through your Separation Date.

3. Subject to your execution and the effectiveness of this Separation Agreement and within 30 days of such effectiveness or as soon as thereafter as practicable, CSFB will pay to you a lump sum discretionary payment equal to $735,000 (paid minus applicable taxes and elected deductions).

4. Attached hereto as Exhibit A is a summary of the Company-sponsored incentive plans in which you participate and as Exhibit B, a summary of your benefits as provided by Black Mountain Management, Inc.

5. Except for the compensation and benefits provided herein and those stated in Exhibits A and B hereto, you shall not be entitled to any future compensation or benefits from CSFB, with the exception of those benefits required under CSFB policy or laws or regulations. You will not receive an incentive performance bonus for 2001 or any subsequent year.

6. The Company retains the right to deduct and withhold from any payments to you all sums that it may be required to withhold pursuant to applicable tax withholding laws or regulations. Any liabilities you may have to the Company, including, without limitation, any liabilities in respect of outstanding advances by the Company and any liabilities to reimburse the Company for any personal

---

[1] Effective January 17, 2003, Credit Suisse First Boston Corporation and Donaldson, Lufkin & Jenrette Securities Corporation reincorporated, respectively, as Credit Suisse First Boston LLC and Pershing LLC.

DRAFT 4/9/2003
THIS IS <u>NOT</u> AN OFFER - SUBJECT TO INTERNAL APPROVAL

expenses, such as for taxis, car service, or meals, that you have erroneously charged to the Company, must be paid in full before the payment provided in paragraph 3 above is made, or the Company may, at its option, deduct any such amounts from any payment to you under paragraph 3. All AMEX or similar corporate credit card charges by you must be cleared before any payment provided in paragraph 3 is made. Any write-offs of any AMEX or similar charges or amounts that were your responsibility but which are paid by the Company will cause "income" to be imputed to you on your W-2. You will be subject to tax on this additional income.

7. You understand and acknowledge that this Separation Agreement will bar recovery in any forum for any claims that are the subject matter of the release set forth herein, and that you will neither seek nor accept any moneys for any claim or cause of actions which is the subject matter of this release. It is also understood that, in exchange for the payment provided in paragraph 3 above, you release and waive all claims, causes of action or the like that you had, now have or may in the future have against the Company, as herein above defined, whether now known or unknown, in respect to all matters relating to your employment with the Company, separation from employment with the Company, which you acknowledge was for nondiscriminatory reasons, or treatment of you by the Company while in the Company's employ, including all claims related to severance, notice of termination, the payment of salary and/or incentive performance bonus, commissions or any other compensation, and all claims arising under the Age Discrimination in Employment Act of 1967 ("ADEA") as amended by the Older Workers Benefit Protection Act, Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, the Equal Pay Act of 1962, the Americans with Disabilities Act of 1990, the Workers Adjustment and Retraining Notification Act, the New York State Human Rights Law (Article 15 of the New York State Executive Law), the New York City Human Rights Law (Title I, Chapter B of the Administrative Code of the City of New York), or any other federal, state or local statute or ordinance, and you further release and waive any other claim or cause of action recognized in law or equity which you had or now have against the Company arising out of conduct, acts or omissions of the Company occurring prior to the execution date of the Separation Agreement. Except for a claim brought under the ADEA, or a claim in good faith for breach of this Separation Agreement, or for failure of the Company to provide to you any obligation in its benefit plans in which you are vested, should you take any action contrary to the obligations set forth above, or should you institute any cause of action or arbitration with regard to your employment, treatment by the Company during your employment, termination of employment, compensation or incentive performance bonus or any other claim or cause of action against the Company recognized in law or equity arising out of conduct, acts or omissions of the Company occurring through the execution date of this Separation Agreement, in any Federal, State or local judicial forum or in an arbitration under any industry regulatory entity, or should this release and waiver be unenforceable for any reason, the Company shall be entitled to cease making any discretionary payments and providing any benefits due hereunder and to recover from you the full value of any discretionary payments or benefits provided to you under paragraph 3 of this Separation Agreement.

2

DRAFT 4/9/2003
THIS IS <u>NOT</u> AN OFFER - SUBJECT TO INTERNAL APPROVAL

8. You acknowledge and agree as follows:

   a) Any payments or benefits provided to you under the terms of this Agreement do not constitute an admission by CSFB that it has violated any law or legal obligation with respect to any aspect of your employment or separation therefrom.

   b) You have not instituted, assisted, or otherwise participated in connection with, any complaint, claim, charge, lawsuit, or administrative agency proceeding, or action at law or otherwise against CSFB. To the extent permitted by law, you waive your right to institute in the future any complaint, claim, charge, lawsuit, or administrative proceeding, or action at law or otherwise against CSFB, and agree not to accept any relief or recovery from any such action or proceeding filed on your behalf.

   c) You will make no representations, warranties, or commitments binding CSFB without CSFB's prior consent. You will execute no agreement on behalf of CSFB nor shall you hold yourself out to have such authority.

9. You further agree as follows:

   a) The information contained in this Separation Agreement is confidential and you will not disclose the terms hereof to any entity, organization, or person, including any employee or former employee of the Company, except that you may disclose the terms of this Separation Agreement to your spouse, your attorney or your accountant, or as necessary to enforce your rights under this Separation Agreement.

   b) You will not make any comments or statements to the press, employees of the Company, any individual or entity with whom the Company has a business relationship or any other person if such comment or statement could be likely to adversely affect the conduct of the business of the Company, or any of its plans or prospects or the business reputation of the Company or that of any of its employees, except as may be required by law or subpoena.

   c) You will not disclose, or use for your benefit or the benefit of any other person or entity, any information you obtained in connection with your employment, which is confidential or proprietary to the Company. For this purpose, information that is proprietary or confidential to the Company shall mean information, which has been developed by the Company and is unique to the Company and the unauthorized disclosure or use of which would reduce the value of such information to the Company. Such information includes, without limitation, the Company's client lists; its trade secrets; any confidential information about or provided by any client or prospective or former client of the Company; information concerning the Company's or any client's or customer's business or financial affairs, including its books and records, commitments, procedures, plans and prospects, financial products developed by it, its securities positions, trading strategies, and current or prospective transactions or business, and any "inside information." Nothing set forth in this subparagraph shall be interpreted to prohibit you from disclosing any such information as may be required by law, including pursuant to any court or government decree and/or subpoena and/or responding to any inquiry about this settlement

3

DRAFT 4/9/2003
THIS IS <u>NOT</u> AN OFFER - SUBJECT TO INTERNAL APPROVAL

      or its underlying facts and circumstances by the Securities and Exchange Commission, the National Association of Securities Dealers, Inc., or any other self-regulatory, or investigatory organization.

    d)    You have delivered to the Company, and you have retained no copies of, any written materials, records and documents made by you or coming into your possession during the course of your employment with the Company which contain or refer to any such proprietary or confidential information. In addition, you have delivered to the Company any other Company property in your possession or control, including without limitation, any equipment. Nothing in this subparagraph (d) shall prevent you from retaining and utilizing copies of benefits plans and programs in which you retain an interest, desk calendars, or personal office furnishings or such other records and documents as may be approved by the Company.

    e)    You did not, at any time prior to the date on which you were no longer on the active payroll of the Company, or, if at the time of the termination of your employment you were a Vice President or above, for 30 days thereafter, directly or indirectly solicit (i) any customer or client to transfer its business from any company in the Credit Suisse First Boston business unit to another entity or person or (ii) any employee to leave the employ of, or any consultant or independent contractor to leave the service of, any company in the Credit Suisse First Boston business unit to join or perform services for another entity or person.

10.    Any breach of the provisions of paragraph 9 of this Separation Agreement by you shall be considered a material breach of this Separation Agreement. You acknowledge and agree that, in the event of such a breach or threatened breach by you, the Company shall be entitled to appropriate injunctive relief, and shall be entitled to liquidated damages for such breach equal to the full value of discretionary severance payments and benefits made or provided to you under paragraph 3 of this Separation Agreement (which may, to the extent that such discretionary payments and benefits have not been made or provided, be offset against such payments and benefits), and shall further be entitled to recover its reasonable costs and attorney's fees incurred in seeking relief for any such breach.

11.    Upon service of you, or anyone acting in your behalf, of any order or other legal process requiring you to divulge information prohibited from disclosure under this Agreement, you shall immediately notify CSFB's General Counsel of such service and of the content of any testimony or information to be provided pursuant to such order or process.

12.    You agree to make yourself available to the Company in any pending or future governmental or regulatory investigation, civil or administrative proceeding, or arbitration, subject to any privileges that you may have and to your other personal and business commitments. The Company will reimburse you for all reasonable costs and expenses incurred by you in connection with any such proceeding or arbitration.

13.    It is mutually understood and agreed that this Separation Agreement constitutes the entire understanding between you and the Company relating to the subject matter of this Separation Agreement and that no one at the Company has made

4

DRAFT 4/9/2003
THIS IS <u>NOT</u> AN OFFER - SUBJECT TO INTERNAL APPROVAL

any oral or written promises to you that are not fully and accurately set forth in this Separation Agreement. It is also understood that you have carefully read the entire terms of this Separation Agreement; that you know and understand the binding effect of this Separation Agreement and have been advised to take (and have taken) the opportunity to review its terms with an attorney prior to execution; and that you voluntarily and knowingly agree to the terms of this Separation Agreement. This Separation Agreement will be interpreted in accordance with the laws of the State of New York (without regard for the conflicts of laws principles thereof). This Separation Agreement will be binding on the parties' successors, assigns, heirs, and/or executors. In the event of your death, all amounts payable to you hereunder shall be paid to your estate.

14. If you do not accept this Agreement, the delivery of this Agreement is without prejudice and in contemplation of settlement of any potential claims against CSFB and will not be admissible for any purpose against CSFB.

15. If, at any time after the effective date of this Separation Agreement, any provision of this Separation Agreement shall be held by any court of competent jurisdiction to be illegal, void, or unenforceable, such provision shall be of no force and effect. The illegality or unenforceability of such provision, however, shall have no effect upon, and shall not impair the enforceability of, any other provision of this Separation Agreement.

16. You will have twenty-one (21) days from the date of this Separation Agreement to review this Separation Agreement and consider whether to execute this Separation Agreement, and seven (7) days after your execution and delivery of this Separation Agreement to revoke your acceptance. If the Company does not receive written revocation from you within such seven-day period, this Separation Agreement shall become effective upon expiration of such seven-day period.

If this letter agreement is acceptable to you, please sign the enclosed copy of this letter and return it to us.


Very truly yours,


Credit Suisse First Boston Corporation


By _____

Joanne Hogan
Director, IBD Human Resources


5

DRAFT 4/9/2003
THIS IS <u>NOT</u> AN OFFER - SUBJECT TO INTERNAL APPROVAL

I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT AND UNDERSTAND ALL OF ITS TERMS, INCLUDING THE FULL AND FINAL RELEASE OF CLAIMS SET FORTH ABOVE. I FURTHER ACKNOWLEDGE THAT I HAVE VOLUNTARILY ENTERED INTO THIS AGREEMENT, THAT I HAVE NOT RELIED UPON ANY REPRESENTATION OR STATEMENT, WRITTEN OR ORAL, NOT SET FORTH IN THIS AGREEMENT, AND THAT I HAVE BEEN GIVEN THE OPPORTUNITY AND ENCOURAGED TO HAVE THIS AGREEMENT REVIEWED BY AN ATTORNEY.

Agreed and accepted on this
___ day of _____, 200_

_____
Patrick J. Callahan Jr.

DRAFT 4/9/2003
THIS IS <u>NOT</u> AN OFFER - SUBJECT TO INTERNAL APPROVAL

## Exhibit A

1. <u>Retention Award</u>:  Pursuant to the terms of your Retention Agreement with DLJ dated September 27, 2000, you were granted a Retention Award with an initial total value of $500,000.  According to the terms of the Retention Award, vesting of the July 1, 2001 tranche of the Credit Suisse Group phantom shares (3,492 shares) occurred on such date and vesting of the July 1, 2002 and the July 1, 2003 tranches of Credit Suisse Group phantom shares (6,984 shares) occurred on your Separation Date as the Company terminated your employment without Cause.  Payment of this Retention Award is separate and apart from the total sum referred to in paragraph 3 of this Separation Agreement.

2. <u>DLJ/LBO Incentive Plan – 2000</u> – Your $200,000 allocation is fully vested and no longer subject to purchase by the Managing General Partner.  These interests otherwise remain subject to the terms of the applicable Plan documents.

3. <u>DLJ Car Program</u> - With respect to your participation in the DLJ Automobile Program, you purchased your car in accordance with the terms of the Program.

# EXHIBIT B

**Name** Patrick J. Callahan Jr.
Benefits Summary
**Service Date:** 3/30/93 - **DOB:** REDACTED
**Termination Date:** 12/31/01

## 401K Plan:

| | |
|---|---|
| Pre-tax | $10,918.65 |
| After-Tax: | $2,606.25 (includes pre-tax earnings) |
| Total vested balance: | $13,524.90 as of 11/20/01 |

You can call the 401(k) Service Center at 1/800-588-6200 24 hours/day for account balance info and other transactions or access your account on-line at www.401k.com.

## Pension Plan:

| | |
|---|---|
| Date of Birth: | REDACTED Per Fed. R. Civ. P 5.2(a)  1942 |
| Adjusted Hire Date: | 1/11/1994 |
| Calculation Date: | 11/1/2001 |
| Spouse's Date of Birth: | 1945 |
| Interest Rate: | 5.48% |

| | |
|---|---|
| TERMINATION DATE: | 12/31/2001 |
| RETIREMENT DATE: | 1/1/2002 |

### ESTIMATED ANNUAL PENSION PLAN BENEFIT:

**REDUCED FROM FULL RETIREMENT AGE:**

| | |
|---|---|
| Age Payable: | 59.250 |
| Service: | 8 |
| Age Nearest of Spouse: | 57 |

| | Age 62 |
|---|---|
| Life Annuity: | $ 19,027 | $ 24,899 |
| 50% Joint & Survivor Annuity: | $ 16,953 | $ 21,662 |
| 100% Joint & Survivor Annuity: | $ 15,298 | $ 19,172 |
| Lump Sum: | $ 260,706 | $ 312,241 |

**DEFERRED TO FULL RETIREMENT AGE OF:** 65

| | |
|---|---|
| Life Annuity: | $ 34,084 |
| 50% Joint & Survivor Annuity: | $ 29,073 |
| 100% Joint & Survivor Annuity: | $ 25,325 |
| Lump Sum: | $ 376,659 |

**Medical Coverage:**

Note: Your benefit above is based on prior plan provisions since it produces a higher benefit than under the new plan provisions.

Lump sums are estimated using the current interest rate. Actual lump sums will be based on the rate in effect on your retirement date.

Family Unitedhealthcare medical coverage will continue after retirement

The 2002 premium for family Unitedhealthcare coverage is $624.00 per month

You would pay 50% of this amount or $312.00

In-network benefits available until age 65

The amount of the annual cash deductible for the out-of-network feature of the PPO plan is 2% of your average final pay at retirement. Average final pay means your base salary immediately preceding retirement, plus an average of your bonuses for the three calendar years before retirement. The minimum cash deductible is $1,000, the maximum is $5,000 (these amounts are indexed for inflation). This annual cash deductible will take effect in the calendar year following your retirement and applies each calendar year thereafter.

Medicare will become your primary carrier beginning at age 65

Dental coverage ceases at retirement

**Life Insurance:**

Ceases at retirement.

**Supplemental Life Insurance:**

Ceases at retirement. You may convert this policy to an individual policy within 31 days of your retirement by contacting Brice Daszewski at (646) 536-8831

**Business Travel Accident Insurance:**

Ceases at retirement

**Personal Accident Insurance:**

Ceases at retirement

**Long-Term Disability:**

Ceases at retirement; may apply to convert to individual policy within 31 days of retirement (maximum benefit $5,000 per month). Please contact Tara Dickerson at 646/536-8830 to do so.

**Vacation:**

Eligible to be paid for all unused vacation. Any vacation taken will be reflected in final vacation paid.

**Excess Liability Coverage:**

Full coverage of $10M is continued at firm's cost until age 70.

**Employee Assistance Program (EAP):**

Employee Assistance Program (EAP) is available to you after retirement on the same basis as when you were an employee.

EAP is a confidential service to help employees deal effectively with problems like stress, anxiety or family problems.

To use the service you would contact EAP directly at 1 800 284-1819.

**Deferred Compensation Plans:**