# Exhibit 7



CREDIT SUISSE SECURITIES (USA) LLC
One Madison Avenue           Tel      1 212 325 2000
New York, NY 10010-3629      www.credit-suisse.com

April 7, 2009

**VIA FEDERAL EXPRESS**

Benjamin D. Steiner, Esq.
O'Halloran Kosoff Geitner & Cook P.C.
Edens Corporate Center, 4th Fl.
650 Dundee Road
Northbrook, Illinois 60062

Re:   <u>Patrick J. Callahan v. Credit Suisse</u>

Dear Mr. Steiner:

Per our discussion, enclosed please find two (2) original separation agreements for Mr. Callahan. Please have your client sign both documents and return one signed original to my attention within the timeframe specified in the separation agreement.

You may contact me at (212) 538-7303 if you have any questions.

Very truly yours,

Brennan S. McDonough
Vice President & Counsel

Enclosures



April 7, 2009

Mr. Patrick J. Callahan, Jr.

Dear Patrick:

This letter agreement (the "Separation Agreement") will confirm the terms of the termination of your employment with Credit Suisse Securities (USA) LLC and its affiliates and/or predecessors ("Credit Suisse"; Credit Suisse, together with Credit Suisse Group AG and all its other direct and indirect subsidiaries, and its and their successors, past, current or future shareholders, directors, Managing Directors, Directors, officers, and employees, and any one else connected with them, is the "Bank").  For purposes of this Separation Agreement, "you" shall include your heirs, executors, administrators, attorneys, representatives, successors and assigns.

1. Effective as of December 31, 2001 (the "Separation Date"), your employment with Credit Suisse terminated.

2. Subject to your execution and the effectiveness of this Separation Agreement and within thirty (30) days of such effectiveness or as soon thereafter as practicable, Credit Suisse will pay to you a lump sum discretionary payment equal to Seven Hundred Thirty-Five Thousand Dollars ($735,000.00) (paid minus applicable taxes and deductions), pursuant to the handwritten Settlement Agreement between you and Credit Suisse, dated March 6, 2003.

3. You understand and agree that the consideration under the terms of this Separation Agreement is in addition to anything of value to which you are otherwise entitled.  Except for the compensation and benefits provided herein and those stated in Exhibit A hereto, you shall not be entitled to any future compensation or benefits from the Bank, with the exception of those benefits required under applicable Bank policy or laws or regulations. You will not receive an incentive performance bonus for 2001 or any subsequent year.

4. The Bank retains the right to deduct and withhold from any payments to you all sums that it may be required to withhold pursuant to applicable tax withholding laws or regulations. Any liabilities you may have to the Bank, including, without limitation, any outstanding loans or advances by the Bank and any liabilities to reimburse the Bank for any taxes paid on your behalf or personal expenses (such as for taxis, car service, or meals) that you have erroneously charged to the Bank, must be paid in full before any payment provided in paragraph 2 above is made, or the Bank may, at its option, deduct any such amounts from any payment to you under paragraph 2.  As of the date of this Separation Agreement, the Bank is not aware of any outstanding liabilities you have to the Bank with respect to this paragraph.

5. You understand and acknowledge that this Separation Agreement will bar recovery in any forum for any claims that are the subject matter of the release set forth herein, and that you will neither seek nor accept any moneys for any claim or cause of action which is the



subject matter of this release. It is also understood that, in exchange for the payment provided in paragraph 2 above, you release and waive all claims, causes of action or the like that you had, now have or may in the future have against the Bank, as defined above, as of the date of your execution of this Separation Agreement whether now known or unknown, in respect to all matters relating to your employment with Credit Suisse, separation from employment with Credit Suisse, which you acknowledge was for nondiscriminatory reasons, or treatment of you by the Bank while in Credit Suisse's employ, including, without limitation, all claims related to severance, notice of termination, the payment of salary and/or incentive performance bonus, commissions or any other compensation, and all claims arising under the Age Discrimination in Employment Act of 1967 ("ADEA") as amended, the Older Workers Benefit Protection Act of 1990, Title VII of the Civil Rights Act of 1964 as amended, the Civil Rights Act of 1991, the Equal Pay Act of 1963, the Americans with Disabilities Act of 1990 as amended, the Worker Adjustment and Retraining Notification Act of 1988, the U.S. Sarbanes Oxley Act of 2002, the Family and Medical Leave Act of 1993 as amended, the Employee Retirement Income Security Act of 1974 as amended, the New York State Human Rights Law, the New York State Worker Adjustment and Retraining Notification Act, the New York City Human Rights Law, the Illinois Wage Payment and Collection Act, the Illinois Human Rights Act, the Illinois Equal Pay Act, the Illinois Workplace Privacy Act, the City of Chicago Human Rights Ordinance, the Attorneys Fees in Wage Actions Act, the Illinois Workers' Compensation Act, the Illinois Whistleblower Act, the Illinois Worker Adjustment and Retraining Notification Act or any other federal, state or local statute or ordinance and all amendments thereto, and you further release and waive any other claim or cause of action recognized in law or equity which you had or now have against the Bank arising out of conduct, acts or omissions of the Bank occurring as of your execution of the Separation Agreement.  Except for a claim brought under the ADEA, or a claim in good faith for breach of this Separation Agreement, or for failure of the Bank to provide to you any obligation in its benefit plans in which you are vested and then only pursuant to the Credit Suisse U.S. Employment Dispute Resolution Program (formerly called the Credit Suisse First Boston Employment Dispute Resolution Program), should you take any action contrary to the obligations set forth above, or should you institute any cause of action or arbitration with regard to your employment, treatment by the Bank during your employment, termination of employment, compensation or incentive performance bonus or any other claim or cause of action against the Bank recognized in law or equity arising out of conduct, acts or omissions of the Bank occurring as of your execution of this Separation Agreement, in any Federal, State or local judicial forum or in an arbitration under any entity, or should this release and waiver be unenforceable for any reason, the Bank shall be entitled to cease making any discretionary payments due hereunder and to recover from you the full value of any discretionary payment provided to you under paragraph 2 of this Separation Agreement.  This Separation Agreement is not intended to release vested rights under any pension or retirement benefit plan maintained by the Bank which shall be governed by the applicable plan.

6. You acknowledge and agree as follows:

   (a) Any payments or benefits provided to you under the terms of this Separation Agreement do not constitute an admission by the Bank that it has violated any law or legal obligation with respect to any aspect of your employment or separation therefrom.



(b) You have not instituted, assisted, or otherwise participated in connection with, any complaint, claim, charge, lawsuit, or administrative agency proceeding, or action at law or otherwise against the Bank. To the extent permitted by law, you waive your right to institute in the future any complaint, claim, charge, lawsuit, or administrative proceeding, or action at law or otherwise against the Bank, based on conduct occurring as of your execution of the Separation Agreement, and agree not to accept any relief or recovery from any such action or proceeding filed on your behalf. Nothing shall prevent you from exercising your right under the Older Workers Benefit Protection Act of 1990 to challenge the validity of your waiver of ADEA claims set forth in paragraph 5 of this Separation Agreement.

(c) You will make no representations, warranties, or commitments binding the Bank without the Bank's prior consent. You will execute no agreement on behalf of the Bank nor shall you hold yourself out to have such authority.

7. You further agree as follows:

(a) The information contained in this Separation Agreement and the claims that have been or could have been raised against the Bank or the facts and circumstances underlying this Separation Agreement are confidential and you will not disclose such information to any entity, organization, or person, including any employee or former employee of the Bank, except that you may disclose the terms of this Separation Agreement to your spouse, domestic partner, your attorney, financial advisor or your accountant, provided such individuals are informed of this paragraph and agree to be bound by it, or as necessary to enforce your rights under this Separation Agreement. This Separation Agreement, its terms, and the claims that have been or could have been raised by and/or against the parties hereto shall not be used by you as evidence or in connection with or made subject to a request for documents or other information by you in any other proceeding, except as set forth herein.

(b) You agree that you will not defame, criticize or disparage the Bank (which term includes its past, current or future employees), or its products and services in any medium or to any person without limitation in time, except as may be required by law or subpoena.

(c) You acknowledge that, by reason of your position with Credit Suisse, you have acquired or otherwise been exposed to confidential and/or proprietary information of the Bank in written, verbal or electronic form ("Confidential and Proprietary Information"). You represent and warrant that you have held all such Confidential and Proprietary Information confidential and will continue to do so and that you will not disclose or use such Confidential and Proprietary Information for any purpose except as expressly authorized by Credit Suisse. You will not disclose, or use for your benefit or the benefit of any other person or entity, any Confidential and Proprietary Information you obtained in connection with your employment, which is confidential or proprietary to the Bank. Such Confidential and Proprietary Information includes, without limitation, any non-public, business or personal information about the Bank or its current or former or prospective employees or other personnel, clients, customers, vendors or counterparties or others to whom the Bank owes a duty of confidentiality, including, but not limited to: client lists; client files or materials; proposals; financial information; analyses; projections; forecasts; financial statements and trading information (to the extent that such

**CREDIT SUISSE**

information is not generally available to the public); client account information; information about securities positions; trading strategies and transactions; personally identifiable information; computer programs; department organization charts or other employee or personnel lists; and information about business plans, methods, products and services; any Bank Intellectual Property (as defined below); and any material, nonpublic, price-sensitive, corporate or market information relating to the Bank, its clients or customers or others, that is acquired in connection with your employment ("Inside Information"). For these purposes, "material" means information that if made public would likely have a significant impact on the price of the issuer's security or information that a reasonable investor would consider important in deciding whether to purchase, hold or sell the security regardless of how such Confidential and Proprietary Information may be kept in any form, including, but not limited to, documents, proposals, analyses, memoranda, records, notes, reports, recordings, computer codes, programs, models, files or disks, computer files, electronic mail, cd-roms, DVD's, hard drives, flash memory, floppy disks, cassette tapes, rolodex or other address and telephone lists, and other media. Nothing set forth in this Separation Agreement shall be interpreted to prohibit or restrict any person from testifying, disclosing information, and making truthful statements, as required by law, including pursuant to any court or government decree and/or subpoena and/or responding to any inquiry, or providing testimony, about this settlement or its underlying facts and circumstances by, or before, the Securities and Exchange Commission, the Financial Industry Regulatory Authority, any other self-regulatory organization, any other federal or state regulatory authority, or investigatory organization, or from disclosing information in confidence to an attorney for the purpose of obtaining legal advice.

You represent, warrant and agree that you may face civil liability and regulatory sanctions for disclosing or using any Confidential and Proprietary Information inappropriately. If you are doing business in certain jurisdictions, you may face criminal liability for disclosing information on current, former or prospective clients of the Bank. You understand that in the event of a breach or threatened breach of this Separation Agreement by you, the Bank would suffer irreparable harm, the exact amount of which shall be difficult to ascertain, and that the remedies at law for any such breach shall be inadequate. You therefore agree that Bank shall be entitled to injunctive relief, without posting a bond or other security. You also understand that even inadvertent disclosure of Confidential or Proprietary Information may be harmful to all concerned and that it is a criminal offense to trade or encourage others to trade on Insider Information.

You further acknowledge and agree that all rights in intellectual property, including inventions, designs, works of authorship, formulas, processes, ideas, trade secrets, data, databases, trademarks, trade dress, trade names and Internet domain names ("Bank Intellectual Property") created or developed alone by you or jointly with others during the period of your employment and during any notice period are owned by the Bank, and you agree to execute any documents or take any other action that the Bank reasonably requests to confirm and vest such ownership with the Bank.

(d)    Within three (3) days of the date on which your employment terminated, you delivered to the Bank, and you retained no copies in any form, including but not

# CREDIT SUISSE

limited to, any written memoranda, notes, reports, computer files, electronic mail, cd-roms, DVD's, hard drives, flash memory, floppy disks, cassette tapes and other media, records or other documents made by you or coming into your possession or as to which you had access during the course of your employment with Credit Suisse which contain or refer to any Confidential and Proprietary Information. In addition, you within such three-day period delivered to the Bank any other Bank property in your possession or control, including without limitation, any computer equipment and computer accessories; portal digital assistants and other electronics; office equipment; supplies or furnishings and patents, trademarks, copyrights or other intellectual property. Moreover, following the Separation Date, you did not remove any Confidential and Proprietary Information or other data or property belonging to the Bank. Nothing in this subparagraph (d) shall prevent you from retaining and utilizing copies of benefits plans and programs in which you retain an interest, desk calendars, or personal office furnishings or such other records and documents as may be approved in advance by the Bank.

(e) You did not, at any time prior to your Separation Date, or for sixty (60) days thereafter,

(i) directly or indirectly hired, solicited, induced or encouraged any employee of the Bank, or any consultant or independent contractor providing services to the Bank, to leave the Bank or to join or perform services for any other company; or

(ii) directly or indirectly solicited, induced or encouraged any entity or person who is a customer or client of the Bank to cease to engage the services of the Bank in order to use the services of any entity or person that competes directly with a material business of the Bank, where the identity of such customer or client, or the customer's or client's need or desire for or receptiveness to services of a type offered by the Bank, was known by you as a result of your employment with Credit Suisse.

8. Any breach of the provisions of paragraph 7 of this Separation Agreement by you shall be considered a material breach of this Separation Agreement. You acknowledge and agree that, in the event of such a breach or threatened breach by you, the Bank shall be entitled to appropriate injunctive relief, and shall be entitled to liquidated damages for such breach equal to the full value of any discretionary payments made to you under paragraph 2 of this Separation Agreement (which may, to the extent that such discretionary payments have not been made, be offset against such payments), and shall further be entitled to recover its reasonable costs and attorney's fees incurred in seeking relief for any such breach.

9. Upon service on you, or anyone acting in your behalf, of any order or other legal process requiring you to divulge information prohibited from disclosure under this Separation Agreement, you shall immediately notify Credit Suisse's General Counsel by fax at 212-325-2121 and by overnight mail of such service and of the content of any testimony or information to be provided pursuant to such order or process and will cooperate with the Bank if the Bank shall contest or seek to quash such order or other legal process.

10. You agree to make yourself available to the Bank in any pending or future governmental or regulatory investigation, civil or administrative proceeding, or arbitration, including any internal investigations related thereto, subject to any privileges that you may have and to your other personal and business commitments. The Bank will reimburse you for all



reasonable costs and expenses incurred by you in connection with any such proceeding or arbitration.

11. The parties hereto intend that all benefits and payments to be made to you hereunder will be provided or paid to you in compliance with all applicable provisions of Section 409A of the Internal Revenue Code of 1986 as amended, and the regulations issued thereunder, and the rulings, notices, and other guidance issued by the Internal Revenue Service interpreting the same (the "Code"). This Separation Agreement shall be construed and administered in accordance with such intent; provided, however, that nothing hereunder shall (i) guarantee that the payments will not be subject to taxes, interest and penalties under Section 409A of the Code or (ii) entitle you to a reimbursement on any tax liability incurred in connection with payments provided hereunder.

12. It is mutually understood and agreed that this Separation Agreement constitutes the entire understanding between you and the Bank relating to the subject matter of this Separation Agreement and that no one at the Bank has made any oral or written promises to you that are not fully and accurately set forth in this Separation Agreement. It is also understood that you have carefully read the entire terms of this Separation Agreement; that you know and understand the binding effect of this Separation Agreement and that you voluntarily and knowingly agree to the terms of this Separation Agreement. This Separation Agreement will be interpreted in accordance with the laws of the State of New York (without regard for the conflicts of laws principles thereof). In the event of your death, all amounts payable to you hereunder shall be paid to your estate.

13. If you do not accept this Separation Agreement, the delivery of this Separation Agreement is without prejudice and in contemplation of settlement of any potential claims against the Bank and will not be admissible for any purpose against the Bank.

14. If, at any time after the effective date of this Separation Agreement, any provision of this Separation Agreement shall be held by any court of competent jurisdiction to be illegal, void, or unenforceable, such provision shall be of no force and effect. The illegality or unenforceability of such provision, however, shall have no effect upon, and shall not impair the enforceability of, any other provision of this Separation Agreement.

15. You will have twenty-one (21) days from your receipt of this Separation Agreement to review and consider it, and to consult with an attorney regarding the terms and effect of this Separation Agreement. You will have seven (7) days after your execution of this Separation Agreement to revoke your acceptance. Any revocation must be in writing and received by the undersigned by 5:00 p.m. on or before the seventh day after this Separation Agreement is executed by you. If the Bank does not receive written revocation from you within such seven-day period, this Separation Agreement shall become effective upon expiration of such seven-day period.



If this Separation Agreement is acceptable to you, please sign the enclosed copy of it and return it to us.

Very truly yours,

Credit Suisse Securities (USA) LLC

By _____
George C. Whipple III, Managing Director

**I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS SEPARATION AGREEMENT AND UNDERSTAND ALL OF ITS TERMS, INCLUDING THE FULL AND FINAL RELEASE OF CLAIMS SET FORTH ABOVE. I FURTHER ACKNOWLEDGE THAT I HAVE VOLUNTARILY ENTERED INTO THIS SEPARATION AGREEMENT, THAT I HAVE NOT RELIED UPON ANY REPRESENTATION OR STATEMENT, WRITTEN OR ORAL, NOT SET FORTH IN THIS SEPARATION AGREEMENT, AND THAT I HAVE BEEN GIVEN THE OPPORTUNITY AND ENCOURAGED TO HAVE THIS SEPARATION AGREEMENT REVIEWED BY AN ATTORNEY.**

Agreed and accepted on this _____ day of ___2009___

_____
Patrick J. Callahan, Jr.



Exhibit A

1. <u>Retention Award</u>:   Pursuant to the terms of your Retention Agreement with DLJ dated September 27, 2000, you were granted a Retention Award with an initial total value of $5,000.  According to the terms of the Retention Award, vesting of the July 1, 2001 tranche of the Credit Suisse Group phantom shares under the Retention Award has already occurred.  The vesting of the July 1, 2002 and the July 1, 2003 tranches of Credit Suisse Group phantom shares (6,984 shares) vested on your Separation Date as the Company terminated your employment without Cause.  You were entitled to the settlement of these Awards within 120 days of your Separation Date.

2. <u>DLJ/LBO Incentive Plan - 2000</u>:   Your $200,000.00 allocation is fully vested and no longer subject to purchase by the Managing General Partner.  These interests otherwise remain subject to the terms of the applicable Plan documents.

3. <u>Employee's Pension Plan of Credit Suisse ("Pension Plan")</u>:   Your participation in the Pension Plan will continue to be governed by the plan documents.  If you have any questions regarding your participation in this plan, please contact the Credit Suisse Benefits Service Center at (888) 325-2732.